UMC PETROLEUM CORPORATION, in its corporate capacity, and on behalf of Benson Drilling Associates No. 1, a general partnership; Benson Drilling Associates No. 2, a limited partnership; JIC Drilling Company No. 3, a limited partnership; JIC Drilling Company No. 4, a limited partnership; and JIC Drilling Company No. 5, a limited partnership; and Joseph L. Castle, II, as managing partner and sole general partner of Benson Drilling Associates No. 2, JIC Drilling Company No. 3, JIC Drilling Company No. 4, and JIC Drilling Company No. 5, Plaintiffs,

v.

J & J ENTERPRISES, INC.; CNG Transmission Corporation; James H. McElwain, Defendants.

Civ. A. No. 89–2109.

United States District Court, W.D. Pennslyvania.

Feb. 12, 1991.

J. Daniel Hull, Pittsburgh, Pa., for plaintiffs.

David E. Tungate, Ronald W. Folino, Pittsburgh, Pa., Thomas R. Goodwin, Richard D. Woen, Charleston, W.Va., Jennifer Hewitt, Samuel W. Braver, Kevin K. Douglas, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before this Court is a motion by defendant, J & J Enterprises, Inc. (J & J), to Stay Litigation Pending Arbitration.

This case arises out of the activities of five (5) joint venture general partnerships established between 1974 and 1981 for the drilling, production and marketing of natural gas. Each of the joint ventures was made up of three co-venturers: defendant, J & J; Ensource, Inc., plaintiff UMC Petroleum Corporation's (UMC's) predecessor in interest; and a different partnership for each respective joint venture from which the joint ventures took their name.

There are five different types of agreements associated with this action: (1) the Oil and Gas Partnership Agreements; (2) the Joint Venture Agreements; (3) the Operating Agreements; (4) the Gas Purchase Contracts; and (5) the Gas Purchase Contract Amendments of March, 1986, and September, 1987. The Joint Venture Agreements set forth the rights and obligations of the respective oil and gas partners and coventurers in the programs. In each of the Joint Venture Agreements there is a section regarding the management of the joint venture operation, which states that J & J:

"... shall manage and conduct all drilling, completion operation, production and marketing activities of the Joint Venture, devoting such time and talents to the same as it may from time to time deem necessary, and shall, except as otherwise limited herein, have full and complete power to do any and all things necessary or incident thereto."

See Joint Venture Agreement—Section 7.

In addition to being a substantial investor in the joint ventures, J & J was the operator of the alleged 187 wells in which the joint ventures had an interest. Pursuant to five Operating Agreements executed between J & J and the respective joint ventures, J & J was designated as the Operator for the drillers, production and marketing of natural gas wells in Pennsylvania and West Virginia. In the Operating Agreements, J & J was appointed attorney-in-fact for the respective joint venture with authority to:

"... execute *any and all* documents or writings deemed necessary to produce, transport or market *any* gas produced by that Joint Venture." (Emphasis added)

Defendant, Consolidated Natural Gas Transmission Corporation (CNG) was the exclusive purchaser of the gas produced by the joint venture wells. The price paid by CNG for the gas was established by the various Gas Purchase Contracts negotiated by J & J as Operator of the wells. The price reflected in the Gas Purchase Contracts was subject to occasional modification.

On two separate occasions, in March of 1986 and September of 1987, J & J entered into Amendments to the Gas Purchase Contracts which reduced the price CNG was to pay for gas produced by the joint venture wells. The defendants contend that the amendments were dictated by adverse market conditions. UMC objected to the unilateral reduction in prices which J & J entered into with CNG.

When UMC's protests proved unfruitful, UMC filed suit against J & J on the 28th of January, 1988, for breaches of contract, breaches of fiduciary duties and for injunctive relief.[1] The basis of jurisdiction of such action was diversity of citizenship. In September of 1989, upon motion of J & J to Dismiss for Failure to Join Indispensable Parties, whose joinder would destroy diversity, UMC's action was dismissed.

Two weeks later, on October 11, 1989, UMC filed the instant litigation. In their Complaint, plaintiffs assert fourteen (14) causes of action including: five (5) counts under RICO; two (2) counts of breach of contract by J & J; one (1) count of tortious breach of fiduciary duty by J & J; one (1) count breach of contract by defendant CNG; one (1) count tortious interference by CNG; one (1) count fraud and deceit on the part of J & J, Jack[2] and McElwain; Injunctive relief against CNG and J & J; and a constructive trust against J & J.

J & J has filed a Motion to Dismiss the Complaint, or in the alternative to Stay the Litigation Pending Arbitration on the grounds that each Joint Venture Agreement, as adopted by UMC's predecessor in interest contains the following arbitration provision:

> Section 22. *Arbitration.* Any dispute or controversy arising out of or relating to this Agreement shall be determined and settled by arbitration in the City of Philadelphia, Pennsylvania, in accordance with then prevailing Commercial Arbitration Rules of the American Arbitration Association. The award rendered by the arbitrators shall be final and conclusive. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and bear the cost of its own experts and legal counsel.

J & J contends that plaintiffs' claims are all premised upon J & J's alleged breaches of its duties and obligations under the Joint Venture Agreements and the Operating Agreements incorporated therein or attached thereto. Therefore, plaintiffs' claims "arise out of or relate to" the Joint Venture Agreements.

The plaintiffs take the position that the motion to stay should be denied on grounds that J & J has waived or should be estopped from asserting the arbitrability issue this late in litigation. Plaintiffs further contend that there is only one arbitrable issue in its complaint, that being Count 7, breach of contract by J & J as managing partner.

The Federal Arbitration Act (Act), 9 U.S.C. § 1 et seq., was intended to "revers[e] centuries of judicial hostility to arbitrate agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–511, 94 S.Ct. 2449, 2452–2453, 41 L.Ed.2d 270 (1974). The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The express mandate of the Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is subject to valid written arbitration agreement, 9 U.S.C. § 3; and it authorizes a federal district court to direct the parties to proceed to arbitration in those instances where it is clear that an agreement to arbitrate has been made and there has been a "failure, neglect or refusal" to comply with the agreement. 9 U.S.C. § 4.

The United States Supreme Court has made clear that the Act establishes a federal policy favoring arbitration and requiring that such provisions be rigorously enforced. See *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 29, 103 S.Ct. 927, 944, 74 L.Ed.2d

---

1. C.A. No. 88–0200, *sub nom. Ensource, Inc. v. J & J Enterprises, Inc. et al.,* filed in the United States District Court for the Western District of Pennsylvania.

2. Sam W. Jack, Jr. is no longer a party to this lawsuit. A suggestion of death was filed on February 28, 1990, no substitution of the proper party was made, and defendant Jack was dismissed with prejudice on June 1, 1990.

765 (1983) and *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242–1243, 84 L.Ed.2d 158 (1985)). In *Shearson/American Express*, the Supreme Court held further that the duty to enforce arbitration agreements is not diminished when a party bound by the agreement raises a claim founded on statutory rights. This expanded the Act to require that certain claims brought under Section 10(b) of the Securities Exchange Act and under RICO be subject to arbitration.

The first issue upon which this Court must focus is whether the parties agreed to arbitrate. Under 9 U.S.C. § 2, the court must determine the validity of the arbitration provision pursuant to the Act's exception where "grounds exist at law or in equity for the revocation of any contract." There is no contention by the plaintiffs that the arbitration agreement is invalid for any reason. Because all parties agree that no grounds exist for the revocation of the arbitration clause contained in the Joint Venture Agreements, such agreements are valid for purposes of the Act.

Plaintiffs contend, however, that the defendant has waived its right to arbitration because it allegedly: (1) knew about this dispute since at least July of 1987; (2) did not raise the arbitration issue in the prior litigation; and (3) participated in discovery in the previous litigation.

■ Under the federal policy favoring arbitration for resolution of disputes, waiver is not to be lightly inferred. *Gavlik Construction Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975), *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968). It is not the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the issue of waiver. In *Demsey & Associates, Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972) citing *Carcich, supra*, the Second Circuit stated as follows:

> "[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver."

See *Gavlik Construction Co. v. H.F. Campbell Co.*, 526 F.2d at 783. Therefore, waiver of a contractual right to arbitrate must be established by clear and convincing proof that the party requesting a stay of judicial proceedings has acted in a manner inconsistent with arbitration and that these inconsistent acts have prejudiced the other party. *J.D. Fegely, Inc. v. Kline Iron & Steel Company, Inc.*, 1989 WL 71549, 1989 US Dist. LEXIS 7218 (E.D.Pa. June 27, 1989).

■ Plaintiffs contend that J & J has maintained its silence concerning arbitration for two and one-half years, beginning with the Ensource's suit against J & J on the 28th of January, 1988 at CA88–0200, and J & J's active participation in discovery during such action. Plaintiffs further argue that it expended considerable effort, time and resources to prosecute the action.

The fact of the matter is that the action filed at CA88–0200 is not at issue before this court. Such action was dismissed in September of 1989 for plaintiffs' failure to join indispensable parties. The required joinder would have destroyed diversity and left the court without subject matter jurisdiction. Two weeks later, on October 11, 1989, plaintiffs filed the instant action, adding causes of action sounding in RICO, thus preserving subject matter jurisdiction in the federal court.

The Second Circuit in *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) found that delay alone, without any prejudice to the opposing party aside from expense and inconvenience, is insufficient to constitute a waiver. This Court is not prepared to find that there was sufficient delay as to prejudice the plaintiffs in any way. For the purposes of this motion, we look to the date at which time jurisdiction in this court was proper, that date being the 11th of October, 1989. J & J filed a Motion for Stay Pending Arbitration on the 13th day of November, 1989. The contentions that J & J has "slept on its rights," and caused plaintiffs to expend considerable effort, time and resources are, therefore, without merit.

■ Discovery taken by J & J, similarly, does not constitute a waiver of its right to

compel arbitration in and of itself. In determining whether discovery of documents concerning arbitrable claims is sufficient to warrant a waiver, the court must again rely on the principle of prejudice to the opposing party. Sufficient prejudice to infer waiver might be found if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration. See *Carcich v. Rederi A/B Nordie*, 389 F.2d at 696 n. 7, *Russo v. Simmons*, 723 F.Supp. 220, 223 (S.D.N.Y.1989). There is no contention by plaintiffs that J & J has gained an unfair advantage through discovery, nor that plaintiffs themselves have been harmed through the discovery process. As such, J & J has not waived its right to exercise its contractual right to arbitration.

The second issue upon which this Court must focus is the scope of the arbitration provision with regard to the claims in the complaint. The court's function is to make only a limited, preliminary determination on the arbitrability of the claim in view of the arbitration provisions. See *Sharon Steel Corp. v. Jewell Coal and Coke Co.*, 735 F.2d 775, 777–779 (3d Cir.1984).

Plaintiffs contend that the only arbitrable count in its complaint is the alleged breach of contract, by J & J as Managing Partner, found at Count Seven. The gravamen of plaintiffs' complaint is that J & J abused its powers as Operator under its Gas Purchase Contracts with CNG. Plaintiffs allege that the RICO counts are not based upon allegations that J & J acted improperly in carrying out its duties under the Joint Venture Agreements, but, instead such claims arise from J & J's intentional exploitation of those powers granted to it under the Operating Agreements by J & J entering into the invalid Gas Purchase Contract Amendments of March, 1986 and September, 1987.

The plaintiff's claim of RICO violations does not diminish the court's duty to enforce a valid arbitration clause. There is nothing in the text of the RICO statute that evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238, 107 S.Ct. 2332, 2344, 96 L.Ed.2d 185 (1987). The burden is on the plaintiffs to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. at 227, 107 S.Ct. at 2337. Plaintiffs have chosen not to attempt to show that Congress intended to preclude the arbitration of RICO claims, but instead rely upon the contention that such claims did not arise out of, or relate to, the Joint Venture Agreements.

Plaintiffs further contend that the focus of the remaining counts against J & J: breach of contract as Operator; tortious breach of a fiduciary duty; fraud and deceit; injunctive relief; and constructive trust; is the Operating Agreements, and not the Joint Venture Agreements.

The arbitration clause contained in the Joint Venture Agreements is an extremely broad one which allows for arbitration of "any dispute or controversy arising out of or relating to" the Joint Venture Agreement. The Joint Venture Agreements give J & J the authority to manage and conduct all marketing activities of the joint venture, while the Operating Agreements appointed J & J as attorney-in-fact for the joint venture with authority to execute all documents necessary to market the gas. Any dispute arising out of the J & J's marketing of the gas, by its very nature appears to "arise out of or relate to" the Joint Venture Agreements.

The United States Supreme Court in *United Steelworkers v. Warrier & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) held that an order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Whether plaintiff's causes of action are styled as RICO, tort or contract actions, all involve J & J's performance of its obligations and duties under the Joint Venture and Operating Agreements. In keeping with the policy reaffirmed by the Supreme Court in

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), that any doubts concerning the arbitrable issues should be resolved in favor of arbitration, this Court finds that the following Counts in the complaint should be submitted to arbitration:

(a) Counts One through Five: Violations of 18 U.S.C. § 1962(a), (b), (c) and (d);

(b) Count Six: Breach of Contract by J & J as Operator;

(c) Count Seven: Breach of Contract by J & J as Managing Partner;

(d) Count Eight: Tortious breach of a fiduciary duty by J & J as Operator; and

(e) Count Eleven: Fraud and Deceit.

The instant action involves claims that are not subject to the arbitration agreement. For instance, claims against CNG and McElwain, and the requests for injunctive relief are not governed by the arbitration agreement. Though Count Fourteen seeks a constructive trust against J & J, plaintiffs can be remedied by a monetary award up through and including the date of an award in an arbitration proceeding. The court must now determine whether a stay of the remaining claims is warranted.

█ The decision to stay litigation of non-arbitrable claims pending the outcome of arbitration "is one left to the district court ... as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra,* 460 U.S. at 20 n. 23, 103 S.Ct. at 939 n. 23. The arbitrable claims tend to dominate those which have been found to be non-arbitrable in that the resolution of such claims will have an impact on those remaining. This Court, therefore, concludes that a stay of this entire proceeding is warranted.

Having concluded that J & J did not waive its right to arbitrate, and that the breadth of the arbitration provision in the Joint Venture Agreement encompasses the majority of the claims in the complaint, J & J's Motion to Stay Litigation Pending Arbitration shall be granted.

An appropriate order follows.

## ORDER OF COURT

AND NOW, this 12th day of February, 1991, upon consideration of defendant, J & J Enterprises, Inc.'s, Motion for Stay Pending Arbitration, and plaintiffs' response thereto, it is hereby

ORDERED that Counts One, Two, Three, Four, Five, Six, Seven, Eight and Eleven shall be submitted to arbitration pursuant to the arbitration provision found in the Joint Venture Agreements;

IT IS FURTHER ORDERED that the above-captioned action is stayed pending arbitration before the American Arbitration Association in Philadelphia, Pennsylvania.