The AMERICAN INSURANCE COMPANY, NAP Financial Corporation, and Mark J. Berman v. Lee CAZORT, Jr.

93-934 871 S.W.2d 575

Supreme Court of Arkansas
Opinion delivered March 14, 1994

316

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Phil Campbell*; and *Robinson, Staler & Marshall, P.A.*, by: *Thomas B. Staler*, for appellants.

*Nichols, Wolff & Ledbetter*, by: *Mark W. Nichols*, for appellee.

ROBERT H. DUDLEY, Justice. Lee Cazort, Jr., appellee, a resident of Arkansas, opened a securities brokerage account with Marc Berman, a resident of Florida who was an employee of

MJB Associates, Inc., a Florida corporation. The account was opened through NAP Financial Corporation, a Texas corporation which has its principal place of business in California. Cazort signed an asset management agreement with Berman and MJB, a letter of transmittal with NAP, and an asset management agreement with First Southwest Company. Each of these documents contains clauses by which Cazort agreed to submit to arbitration all controversies between himself and NAP, Berman, and MJB. The American Insurance Company, appellant, filed a corporate bond with the Arkansas Securities Department in which it agreed to be "liable to any and all persons who may suffer loss by reason of [NAP or Berman's] failure to comply with the law of securities transactions."

Cazort filed this suit in the Circuit Court of Pulaski County and alleged that Berman and NAP engaged in excessive and inappropriate trading in his account. The counts of the complaint alleged that Berman and NAP (1) were not properly registered to sell securities; (2) violated Arkansas statutes by making false statements; (3) committed common law fraud; (4) breached a fiduciary duty; (5) committed common law negligence; and (6) violated the federal Securities Act of 1933. In the same complaint he alleged that appellant American issued a blanket bond "to cause no person to suffer loss" by Berman and NAP's wrongs.

Appellant American filed a cross-complaint against NAP and Berman for indemnity in the event American should be required to make payment on their behalf.

Berman and NAP filed a motion to compel arbitration in accordance with the agreements, and alleged that "the Federal Arbitration Act requires arbitration." Cazort moved for a voluntary nonsuit of the actions against NAP and Berman. The circuit court granted leave to Cazort to voluntarily dismiss the claims against NAP and Berman. This left appellant American as the only defendant remaining in Cazort's suit, although NAP and Berman remained in the case on American's cross-complaint for indemnity should it be required to make payment on their behalf.

Appellant American moved for an order to compel Cazort to submit his claim to arbitration, or in the alternative, to dismiss. Cazort pleaded that he had not signed an agreement with

American to arbitrate. After a hearing, the circuit court denied American's motion to compel arbitration and denied NAP and Berman's motions to dismiss American's cross-complaint. The trial court denied American's motion to compel arbitration because the complaint alleged tort causes of action which are not subject to the Arkansas Uniform Arbitration Act. *See* Ark. Code Ann. § 16-108-201(b) (Supp. 1993). American, NAP, and Berman appeal and argue that the trial court's ruling failed to address their argument that the Federal Arbitration Act is applicable and that the better policy is to compel arbitration. The argument has merit, and we reverse and remand.

The parties appeal from the order denying a motion to compel arbitration. American's jurisdictional statement provides that the order is appealable because Ark. Code Ann. § 16-108-219(a)(1) (1987) authorizes an appeal from an "order denying an application to compel arbitration . . ." and Rule 1-2(a)(12) of the Rules of the Supreme Court provides that the supreme court shall hear "interlocutory appeals permitted by statute. . . ." The statement is partially correct. The statute provides that an appeal may be taken, but the appealability of orders is governed by Rule 2 of the Arkansas Rules of Appellate Procedure and not by Rule 1-2 of the Rules of the Supreme Court. Rule 1-2 addresses the division of appellate jurisdiction between the supreme court and the court of appeals. Under Amendment 58 to the Constitution of Arkansas, which created the court of appeals, the supreme court, by rule, decides which court will have primary jurisdiction of appeals after an appeal has been validly lodged. Rule 1-2 addresses that division of appellate jurisdiction and does not address the appealability of orders. The appealability of orders is governed by Ark. R. App. P. 2. *See Chem-Ash, Inc.* v. *Arkansas Power & Light Co.,* 296 Ark. 83, 751 S.W.2d 353 (1988).

Rule 2 of the Arkansas Rules of Appellate Procedure provides, with certain exceptions, that an appeal may be taken from a judgment or decree that finally determines the outcome of an action. There is no final order in this case. Indeed, the order refusing to compel arbitration is more akin to an order refusing to transfer a case from circuit court to chancery court. *Chem-Ash Inc., supra.* However, Rule 2 preserved all statutory rights of appeal that were in existence at the effective date of the rules, July 1, 1979. Act 38 of 1973, which authorized the supreme court

to prescribe the rules, provides that rights of appeal shall continue as authorized by law. *See* Ark. R. App. P. 2 (court's notes). When we promulgated Rule 2, we did not intend to alter the statutory rights of appeal that were then in existence. *Sunbelt Courier* v. *McCartney*, 303 Ark. 522, 798 S.W.2d 92 (1990), and *Whitlock* v. *G.P.W. Nursing Home, Inc.*, 283 Ark. 158, 672 S.W.2d 48 (1984). The Uniform Arbitration Act and its section on appeals, §16-108-219, were enacted in 1969 and were in existence at the time we promulgated Rule 2. Thus, appellants have a right of appeal under Ark. R. App. P. 2.

We have refused to permit attempted appeals from orders compelling arbitration. *See England* v. *Dean Witter Reynolds, Inc.,* 306 Ark. 225, 811 S.W.2d 313 (1991); *Chem-Ash, Inc.*, 296 Ark. at 85, 751 S.W.2d at 354. Unlike those cases, this is an appeal from an order denying a motion to compel arbitration, and the Uniform Arbitration Act treats the two differently. *See* Ark. Code Ann. §16-108-219. In summary, appellant has a right of appeal and this court has appellate jurisdiction.

American's primary argument is that arbitration should be compelled pursuant to the Federal Arbitration Act. It contends that the federal act controls all agreements to arbitrate disputed transactions involving interstate commerce. The argument is well taken. The word "commerce" is first defined as commerce among the several states. 9 U.S.C. § 1. Section 2 then provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Cazort's transactions involved interstate commerce. *See Parry* v. *Bache Co.*, 125 F.2d 493 (5th Cir. 1942); *England* v. *Dean Witter Reynolds*, 306 Ark. 225, 811 S.W.2d 313 (1991); *McEntire* v. *Monarch Feed Mills, Inc.*, 276 Ark. 1, 631 S.W.2d 307 (1982). In addition, Cazort's complaint alleged violations of the federal Securities Act of 1933. By alleging a violation of the

Securities Act of 1933, Cazort made a claim that the Supreme Court has ruled arbitrable. *See Rodriquez DeQuijas* v. *Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (overruling its previous holding that such claims are not arbitrable).

In *England* v. *Dean Witter Reynolds*, we indicated that claims alleging fraudulent inducement, intentional misrepresentation, and outrage were arbitrable under the federal act. 306 Ark at 226-27, 811 S.W.2d at 314-15. Cases from lower federal courts and another state are in accord. *A.L. Williams & Assoc., Inc.* v. *McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988); *U.M.C. Petroleum Corp.* v. *J & J. Enters., Inc.*, 758 F. Supp. 1069, 1073-74 (W.D. Pa. 1991); and *Paine Webber, Jackson & Curtis* v. *McNeal*, 239 S.E. 2d 401, 403 (Ga. 1977). Claims under state securities law are arbitrable under the federal act. *See Surman* v. *Merrill Lynch, Pierce, Fenner & Smith*, 773 F.2d 59 (8th Cir. 1988); *Krog* v. *Mait*, 712 F.2d 1148 (7th Cir. 1983) *cert. denied*, 465 U.S. 1007 (1984).

The Supreme Court has emphasized a strong preference for removing the parties from court and into arbitration as quickly and easily as possible, and has urged district courts to enforce these agreements as rigorously as possible. *Perry* v. *Thomas*, 482 U.S. 483, (1987); *Shearson/American Express, Inc.* v. *McMahon*, 482 U.S. 220 (1987); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *Dean Witter Reynolds* v. *Byrd*, 470 U.S. 213 (1985); *Moses H. Cone Memorial Hosp.* v. *Mercury Const. Corp.*, 460 U.S. 1 (1983). Even though our state act is more restrictive, cases construing Arkansas law reflected this same policy. *See Dean Witter Reynolds, Inc.* v. *Deislinger*, 289 Ark. 248, 711 S.W.2d 711 (1986); *Bob Ladd, Inc.* v. *Adcock*, 633 F. Supp. 241 (E.D. Ark. 1986); *Wessell Bros. Found. Drilling Co.* v. *Crossett Public Sch. Dist. No. 25*, 287 Ark. 415, 701 S.W.2d 99 (1985); *Merrill Lynch, Pierce, Fenner & Smith* v. *Hovey*, 726 F.2d 1286 (8th Cir. 1984). In summary, the claims asserted by Cazort are arbitrable claims under the federal act.

◼ The next issue is whether American can compel Cazort to arbitration since Cazort did not sign an arbitration agreement with American. Generally the terms of an arbitration contract do not apply to those who are not parties to the contract. *Nolde Bros., Inc.* v. *Local 358, Bakery and Confectioners'*

*Union,* 430 U.S. 243 (1977). *See also Morrie and Shirlee Mages Found.* v. *Thrifty Corp.,* 916 F.2d 402 (7th Cir. 1990); *Lorder Indus.* v. *Los Angeles Printworks Corp.,* 803 F.2d 523 (9th Cir. 1986). However, it is also clear that nonsignatories to a contract may be deemed as parties, through ordinary contract and agency principles, for the purposes of the Federal Arbitration Act. *See Merrill Lynch Commodities* v. *Richal Shipping Corp.,* 581 F. Supp. 933 (S.D.N.Y. 1984); *Hartford Fin. Sys.* v. *Florida Software Serv., Inc.,* 550 F. Supp. 1079 (D. Me. 1982); *Interbras Cayman Co.* v. *Orient Victory Shipping Co.,* 663 F.2d 4 (2d Cir. 1981); *In re Oil Spill by the "Amoco Cadiz,"* 659 F.2d 789 (7th Cir. 1981). The fact that they are not literally covered by the arbitration clause is not dispositive. *See Wells Fargo Bank* v. *London S.S. Owners' Mut. Ins.,* 408 F. Supp. 626 (S.D.N.Y. 1976); *Lumbermens Mut. Casualty Co.* v. *Borden Co.,* 268 F. Supp. 303 (S.D.N.Y. 1967). Nonsignatories which have been deemed parties to such contracts include guarantors. *See Merrill Lynch Commodities,* 581 F. Supp. at 941; *Compania Espanola de Petroleos* v. *Neureus Shipping, S.A.,* 527 F.2d 973 (2d Cir. 1975).

■ In determining whether nonsignatories should properly be deemed parties to an arbitration contract pursuant to the Federal Act, state law contract principles are invoked. *Hartford Fin. Sys.,* 550 F. Supp. at 1086-87.

■■ In our state law, we have recognized the distinction between a surety bond and an indemnity bond. A surety agrees to do the thing that the principal undertakes to do but fails to complete, while an indemnitor agrees to save another from a loss upon an obligation. *Fausett Builders, Inc.* v. *Globe Indem. Co.,* 220 Ark. 301, 305, 247 S.W.2d 469, 471 (1952). American agreed to be "liable to any and all persons who may suffer loss by reason [of NAP's or Berman's] failure to comply with the law of securities transactions." Thus, the bond at issue is an indemnity bond, and under our law Cazort has no right to pursue indemnity from American except for his losses caused by NAP and Berman. *Id.* at 305-06, 247 S.W.2d at 471.

■ Cazort's allegation, in part, is that NAP and Berman breached their contract with him, and they are liable for that breach of contract. He relies on the contract for his breach of contract claim, but, at the same time, seeks to circumvent the

arbitration provision of the same contract by dismissing his claims against the principals NAP and Berman. The indemnitor, American, had filed a cross-complaint against NAP and Berman. If this procedure were to be allowed, NAP and Berman would be denied the benefit of their arbitration agreement. Other courts, when presented with similar factual situations, have compelled arbitration.

In *A.L. Williams & Associates* v. *McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988), McMahon attempted to sue the A.L. Williams company in state court upon claims arising out of his employment with A.L. Williams. 697 F. Supp. at 493. He argued that his wife and other petitioners should not be compelled to arbitrate because they were nonsignatories. *Id.* The district court recognized that, generally, nonsignatories cannot be forced to arbitrate, but it ruled that since Mrs. McMahon alleged "no entitlement to damages distinct from those allegedly suffered by her husband and [based] her entitlement to allegations that she was her husband's business partner" it would not allow her to assert claims arising out of these agreements without requiring her to arbitrate them. *Id.* at 494. Similarly, in *Hughes Masonry Co.* v. *Greater Clarke County School Building Corp.*, 659 F.2d 836 (7th Cir. 1981), the federal court of appeals held that a signatory was estopped from arguing that it should not be compelled to arbitrate with a nonsignatory. *Id.* at 841. It found that, since the signatory was suing the nonsignatory for breach of the contract which contained the arbitration agreement, it should not be able to turn around and deny that the nonsignatory was a party to the agreement in order to avoid arbitration. *Id.* at 838-39. As another court put it, "In short, [plaintiff] cannot have it both ways. It cannot rely on the contract when it works to its advantage and ignore it when it works to its disadvantage." *Tepper Realty Co.* v. *Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966). Still other courts have commented that it would contravene the federal act to allow one to circumvent arbitration as Cazort proposes to do. *See Avila Group, Inc.* v. *Norma J. of California*, 426 F. Supp. 537, 540 (S.D.N.Y. 1977) (opining that "[t]o allow [defendant] to claim the benefit of the contract and simultaneously avoid its burdens would . . . contravene the purposes of the Arbitration Act") and *Sam Reisfield & Son Import Co.* v. *Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (holding that allowing circumvention would effectively

thwart the federal policy in favor of arbitration).

Thus, there is a strong public policy for compelling these claims to be together submitted to arbitration.

 Cazort contends that we should not compel arbitration because statutory bonds are to be construed as if the terms of the statute were written into them, and section 23-42-305(a)(4) of the Arkansas Code Annotated of 1987 provides a direct cause of action on an indemnitor's bond. The securities act, of which the cited statute is a part, was written in contemplation of our established law with the indemnitor and its principal on the one side and the securities purchaser on the other, and it was written in contemplation of the indemnitor's liability being contingent on the liability of the principal to the securities purchaser. The statute does not give an investor a right of direct action against the indemnitor without regard to the principal's liability. An indemnitor is entitled to the rights and defenses available to the principal. *Troxler* v. *Wilson*, 133 Ark. 216, 219, 202 S.W. 819 (1918). For example, if a securities purchaser were to let the statute of limitations run so that he could no longer maintain a suit against a securities dealer, he could likewise no longer maintain a suit against the securities dealer's indemnitor. Similarly, in this case one of the principal's rights is the right to compel arbitration, and this right inures to the benefit of the indemnitor. The statute does not give a right of direct action against an indemnitor without a determination of the amount of the principal's liability.

Reversed and remanded for proceedings consistent with this opinion.

CORBIN, J., not participating.