Welch, J.
Defendant, New England Power Company (“NEP”) moves to dismiss this complaint on the ground that all the claims are subject to a binding arbitration agreement. After holding a hearing on this matter and reviewing the voluminous materials submitted, the motion is granted.
At heart, the question is whether the plaintiff Keystone Shipping is bound by the arbitration clause (clause 41) of the Time Charter Agreement executed between Keystone’s nominee Interstate Bulk Container, Inc. (“IBC”) and NEP. The plaintiff relies upon the well established rule that “arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he does not agree to so submit.” Volt Information Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 485 (1989). The plaintiff argues that its nominee, and not Keystone itself, signed the charter agreement containing the arbitration clause. Keystone buttresses its argument with the equally well established rule that, in many circumstances, a party can limit its liability by appointing a nominee. See Costello v. Pet. Inc., 17 Mass.App.Ct. 382, 386 (1984) (real estate transaction; nominee of real estate trust was solely responsible for outstanding liability).
The plaintiffs argument would be persuasive if this case involved two separate, independent contracts: one executed between NEP and Keystone and another executed between NEP and IBC. See e.g., In re: Hops Anti-Trust Litigation, 655 F.Supp. 169, 172 (E.D. Mo. 1987) (contracts separate in time and not interrelated with each other; one that did not contain arbitration clauses did not require arbitration); Swenson’s Ice Cream Co. v. Corsair Corp., 942 F.2nd 1307, 1310 (8th Cir. 1991) (three separate franchise agreements different in time and relating to different franchises). Knight v. Docu-Fax, Inc., 838 F.Supp. 1579, 1580 (N.D. Ga. 1993) (involving two separate contracts and two separate sources of alleged injury).
The present case presents a considerably different scenario. Keystone indisputably is a signatory to the Settlement Agreement dated October 6, 1989. The alleged breach of the Settlement Agreement is the basis of this law suit. The key component to that Settlement Agreement is the execution of a new charter agreement between Keystone, or a nominee of Keystone, and NEP. According to the plaintiff, Keystone entered into the settlement of a previous dispute with NEP upon the assurance that Keystone would obtain an eighteen-year flow of income from the new Charter Agreement between NEP and Keystone (or its nominee). Complaint ¶1-3. Paragraph 2.0 of the Settlement Agreement provides:
Keystone (or its nominee) shall enter into the new charter with NEP which shall be for a period of 18 years and 2 months on the terms and conditions agreed to by Keystone and NEP, and are set forth therein, a copy of the form of which is annexed hereto as Exhibit 1.
(Emphasis supplied.)
Sure enough the Charter Agreement (which was eventually executed between Keystone’s nominee IBC and NEP) is attached to the settlement agreement as Exhibit 1. Each and every page of that charter agreement is initialed by the representative from Keystone. One of the “terms and conditions agreed to be Keystone and NEP” in that charter agreement is the arbitration clause. There is no dispute that the arbitration clause is sufficiently broadly drafted to encompass the type of fraud-in-the-inducement claim asserted by plaintiff Keystone. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967).
*395 The basis of Keystone’s present fraud complaint is that the Charter Agreement (i.e., the agreement to which NEP and IBC are the actual signatories) contained a “purchase option” (at clause 52) which permitted NEP to purchase the vessel (and, thereby, avoiding the ongoing payments for the eighteen-year period). Keystone alleges that NEP induced Keystone to enter into the settlement agreement by promising that it would never exercise the purchase option contained in the charter agreement. NEP seeks to exercise that purchase option and, Keystone alleges, has thus defrauded Keystone and deprived Keystone of the anticipated “eighteen years stream of payments.” (Complaint, paragraphs 2, 3 and 37-42.)
As can be seen, the settlement agreement essentially incorporates the charter agreement. Keystone, as stated in the settlement agreement, agreed to the terms and conditions in that charter agreement. The extensive charter agreement was attached to the settlement agreement executed by Keystone. The settlement agreement was premised upon the execution of the charter agreement. The extensive charter agreement contained the terms that would govern the parties during their ongoing business dealings. Indeed, the action complained about by Keystone in this lawsuit is NEP’s exercise of one of the provisions in that charter agreement (i.e., the purchase option).
It is rather disingenuous for Keystone to now claim that it did not agree to the arbitration clause contained in the charter agreement. This is a case where the settlement agreement and charter agreement are closely interrelated. The settlement agreement is premised upon the execution of the charter agreement which would provide the eighteen-year stream of income to Keystone in settlement of Keystone’s claims. The terms and conditions of both the settlement agreement and the incorporated charter agreement were the conditions that “clearly covered the parties’ ongoing relationship.” In re: Hops Anti-Trust Litigation, supra at 172. In this situation, even though Keystone is a non-signatory to the particular contract containing the arbitration clause, ordinary contract principles would deem Keystone as being a party who agreed to be bound by the incorporated arbitration clause. See Genesco, Inc. v. T. Kakiuch & Co., 815 F.2d 840, 846 (2d Cir. 1987); Foster v. Sears Roebuck and Co., 837 F.Supp. 1006, 1008 (W.D. MO, 1993); McAllister Bros. v. A&S Transportation Co., 621 F.2d 519, 524 (2nd Cir. 1980). See also Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688, 691 (S.D. N.Y. 1966) (argument that parties did not “resort to the rubric of incorporating the specifications by express reference is untenable. The question is not whether the parties, like some scrivener of old, followed some talismatic formula, but whether they manifested a mutual intent to arbitrate disputes arising out of the contracts . . .”).
Unlike certain cases relied upon by the plaintiff, the alleged source of the injury in this case is the operation of the charter agreement (i.e. the agreement containing the arbitration clause). It is the exercise of the purchase option that the plaintiff complains about. Compare, Knight v. Docu-Fax, Inc., supra at 1580. In essence, the plaintiff wants it both ways. The plaintiff wishes to enforce the settlement agreement which is premised upon the charter agreement (the terms of which plaintiff agreed to). The plaintiff, however, then states that it does not wish to abide by one of the provisions (namely the arbitration provision) of the charter agreement. That the plaintiff cannot do. See A.L. Williams & Assoc. v. McMann, 697 F.Supp. 488, 493-94 (N.D. Ga. 1988).
Finally, the parties’ conduct also illuminates the meaning of these interrelated contracts. When NEP initially executed the option to purchase, a dispute arose. NEP requested arbitration. Thereafter, IBC and Keystone entered into the arbitration regarding the “option to purchase” dispute. Only in the midst of arbitration, after certain decisions had gone in favor of NEP, did Keystone and IBC (represented by the same lawyer and presenting a single, unified position) decide to attempt to withdraw from the arbitration and file this lawsuit. This is some evidence of the on-going relationship between NEP, IBC, and Keystone and the parties’ understanding that the settlement agreement and the charter agreement were closely interrelated and the terms and conditions of both the settlement agreement and charter agreement (including the arbitration clause) had been negotiated and agreed upon by both Keystone and NEP. In these circumstances, there is no reason not to hold Keystone responsible for complying with the arbitration clause. See Genesco, Inc. v. T. Kikuchi & Co., 851 F.2d 840, 846 (2nd Cir. 1987). This is especially true since “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . .” Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).
For the reasons set forth above, the defendant’s motion to dismiss is Granted.