Donald McENTIRE *v.* MONARCH FEED MILLS, INC.

82-40                                           631 S.W.2d 307

Supreme Court of Arkansas
Opinion delivered April 19, 1982

*Ponder & Jarboe*, for appellant.

*Simpson & Riffel*, for appellee and cross-appellant.

FRANK HOLT, Justice. This is an arbitration case. In May, 1980, the appellee contracted to purchase from appellant a quantity of yellow grain sorghum, which appellant expected to grow on his farm during the 1980 crop season. Upon failure to deliver the grain as agreed, the appellee initiated arbitration proceedings, pursuant to their contract, to determine its damages. The appellant responded by filing a petition in chancery court for a stay of arbitration. The appellee filed a counter complaint asking for a mandatory injunction requiring the appellant to submit to arbitration. The court, in dismissing the case, found it did not have jurisdiction to grant a stay, the appellant had an adequate remedy at law, if any, in federal court and denied appellee's petition to require appellant to submit to arbitration. Hence come this appeal and cross-appeal in which both parties urge that the chancellor had jurisdiction to consider a stay of arbitration.

Appellant contends that our Uniform Arbitration Act, Ark. Stat. Ann. §§ 34-511 — 34-532 (Supp. 1981), gave the chancery court power to stay the arbitration proceedings. However, since that act, until amended in 1981, validates only arbitration agreements with respect to construction and manufacturing contracts, the arbitration contract here is unenforceable. Therefore, since the contract involves only intrastate commerce, the chancellor should enter a stay of the arbitration and leave the appellee to his remedy at law. On cross-appeal the appellee argues that even though our state Uniform Arbitration Act on the date of this contract did not include the subject matter here, the trial court did have jurisdiction, pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq.*, inasmuch as interstate commerce is involved in this transaction. Con-

sequently, the chancellor has the power to require submission of the controversy to arbitration.

The issue was submitted to the chancellor on a stipulated record which consisted of the pleadings, the written contract which provided for arbitration, and argument per letters to the chancellor. The appellee, whose principal place of business is in Dexter, Missouri, buys grain and sells feed in southern Missouri and northern Arkansas. It has manufacturing facilities in Dexter, Missouri, and Pocahontas, Arkansas. The contract provided that the appellee would purchase 200,000 pounds of No. 2 yellow grain sorghum at a stipulated price from the appellant, a farmer living near Walnut Ridge, Arkansas. The grain was to be delivered to the appellee's plant in Pocahontas. Pertinent clauses in the contract provide that:

> Seller agrees that no deliveries on this contract will be adulterated within the meaning of the Federal Food, Drug, and Cosmetic Act, or is an article or commodity which may not, under provisions of Section 404 or 506 of the Act, be introduced into interstate commerce. . . .

> Buyer and seller agree that all controversies between them under this contract be settled by arbitration in accordance with the rules and regulations in the Grain Trade Rules of the National Federal Grain and Feed Association.

Section 1 of the Federal Arbitration Act, *supra,* reads: "[C]ommerce, as herein defined, means commerce among the several States . . ." Section 2 of the Act reads:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract.

Arbitration is favored by a strong public policy and courts look with favor upon arbitration as an expeditious means of removing contentions from the area of litigation, which is less expensive to the parties and also eases congestion of court calendars. 6 C.J.S. Arbitration § 2. In *Franks* v. *Battles,* 147 Ark. 169, 227 S.W. 32 (1921), we said:

It has been said by this court, and by numerous others, that it is the policy of the law to encourage and uphold settlements of disputes in this manner.

Here, when we consider the undisputed facts that appellee's activities involve transactions in Missouri and Arkansas, together with the recited provisions in the arbitration contract, it appears fair to say the parties' transactions involved interstate commerce. Therefore, the Federal Arbitration Act is applicable.

We further observe that a state court, as here, has concurrent jurisdiction with the federal courts to enforce rights granted by a federal act unless prohibited from doing so. *Duke* v. *Helena-Glendale Ferry Co.,* 203 Ark 865, 159 S.W.2d 74 (1942); Wright, Law Fed. Cts. 3d Ed., Ch. 8 (1979); 1 Moore's Federal Practice § 0.6 [3], p. 237; *Claflin* v. *Houseman, Assignee,* 93 U.S. 130 (1876); *Mondou* v. *New York, New Haven & Hartford Railroad Co.,* 223 U.S. 1 (1912); and *McKnett* v. *St. Louis and S.F. Ry. Co.,* 292 U.S. 230 (1934).

Here, we find no provision in the Federal Arbitration Act which gives the federal courts exclusive jurisdiction over matters which come within its purview. It follows that the refusal of the chancellor to take jurisdiction of the subject matter was erroneous.

Reversed and remanded on direct and cross-appeal.