Alice L. WALTON *v.* David LEWIS

98-512 987 S.W.2d 262

Supreme Court of Arkansas
Opinion delivered March 18, 1999
[Petition for rehearing denied April 22, 1999.*]

---

* CORBIN and THORNTON, JJ., would grant.

*Conner & Winters, PLLC,* by: *John R. Elrod* and *Vicki Bronson;*
*Williams & Anderson LLP,* by: *Leon Holmes, Peter G. Kumpe,* and
*Jeanne L. Seewald,* for appellants.

*Estes, Estes & Gramling, PLC,* by: *Peter G. Estes, Jr.;* and
*Charles L. Stutte,* for appellee.

ANNABELLE CLINTON IMBER, Justice. This is an arbitration case. The appellants contend that the trial court erred when it denied their motion to compel arbitration of a tort action Mr. Lewis filed against them. We affirm the trial court's ruling.

Alice L. Walton owns and controls over fifteen different companies bearing the "Llama" name. The Llama companies involved in this appeal are Llama Capital Services, L.L.C. ("Llama Capital"), Llama Mortgage Services Corp. ("Llama Mortgage"), and Llama Company, L.P. ("Llama Company"). The appellee, David Lewis, was the Senior Managing Director of the Arbitrage Department of Llama Company, which is a member of the National Association of Securities Dealers ("NASD"). Pursuant to his employment with Llama Company, Mr. Lewis executed a "Uniform Application for Securities Industry Registration or Transfer" form in 1993. This form, which is commonly known in the securities industry as the "U-4," contained the following arbitration clause:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organization indicated in Item 10 [the NASD by-laws including the Code of Arbitration Procedures] as

may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

In October of 1995, Llama Capital and Llama Mortgage entered into a joint venture with Boston Capital Corporation for the buying and selling of commercial mortgages. The joint venture was called "Boston Capital Mortgage Company" (hereinafter "the joint venture"). At the urging of Ms. Walton, Mr. Lewis agreed to serve as a member of the joint venture's Capital Markets Committee. As a member of this committee, Mr. Lewis contends that he was eligible for the "Capital Markets Bonus Plan,"which provides that as a "financial incentive . . . to maximize the value of the mortgage loan portfolio," committee members would be entitled to bonus awards from a bonus pool. The bonus plan contains a formula to calculate the bonus pool, which is based upon a percentage of the joint venture's portfolio net gain.[1] Specifically, Mr. Lewis alleges that he was entitled to approximately $30,000 under this bonus plan. Finally, Mr. Lewis did not complete a U-4 form or any other arbitration agreement in connection with his services to the joint venture as a member of the Capital Markets Committee, and he remained on the Llama Company payroll at all times relevant to this appeal.

Mr. Lewis claims that without his permission or knowledge Ms. Walton, Llama Capital, and/or Llama Mortgage instructed the joint venture to make the bonus payments directly payable to the general partners of the joint venture instead of the individual members of the Capital Markets Committee. The joint venture allegedly complied with this request by paying the funds to the general partners instead of Mr. Lewis. Ms. Walton then allegedly transferred the funds to Llama Company and notified Mr. Lewis that he would not receive those funds.

Accordingly, on August 19, 1997, Mr. Lewis filed a tort action against Ms. Walton, Llama Capital, Llama Mortgage, and

---

[1] The bonus plan defines "net gain" as "realized gain after payment of all expenses . . . including payment to Llama Company of a fair market investment banking fee in the case of securitization."

Llama Company.[2] In his complaint, Mr. Lewis alleged that the defendants converted his property and intentionally interfered with his contractual relationship with the joint venture. Mr. Lewis concluded his complaint with a prayer for "compensatory damages in an amount not less than $35,000" and for "punitive damages against the separate defendant, Alice L. Walton, in the sum of $2,000,000.00." The trial court subsequently granted Mr. Lewis's request to voluntarily nonsuit his claim against Llama Company.

Soon after Mr. Lewis filed his complaint, the defendants filed a motion to dismiss and to compel arbitration. In this pleading, the defendants alleged that the U-4 agreement, the NASD by-laws, and the Federal Arbitration Act required the claim to be submitted to arbitration. On January 28, 1998, the trial court denied the defendants' motion to compel arbitration because the arbitration agreement did not encompass the subject matter or the parties involved in the underlying dispute.

Ms. Walton, Llama Capital, and Llama Mortgage (hereinafter "appellants") timely filed a notice of appeal of the January 28, 1998 order denying the motion to compel arbitration. As we have previously explained, the denial of a motion to compel arbitration is an immediately appealable order. *Terminix Int'l Co. v. Stabbs*, 326 Ark. 239, 930 S.W.2d 345 (1996); *American Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994).

## I. Standard of Review

The first issue we must resolve in this case is what is the appropriate standard of review. The parties concede, and we agree, that this case is governed by the Federal Arbitration Act, instead of the Arkansas Arbitration Act, because the underlying dispute involves interstate commerce. *See Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395 (1967); *McEntire v. Monarch Feed Mills, Inc.*, 276 Ark. 1, 631 S.W.2d 307 (1982). State and federal courts have concurrent jurisdiction to enforce an arbitra-

---

[2] Mr. Lewis did not name Boston Capital Corporation or the joint venture, Boston Capital Mortgage Company, as defendants.

tion agreement pursuant to the terms of the Federal Arbitration Act. *McEntire, supra.* Although we have never addressed the standard of review under the Federal Arbitration Act, the Eighth Circuit Court of Appeals has held that the denial of a motion to compel arbitration is reviewed *de novo. Telectronics Pacing Syst., Inc. v. Guidant, Corp.*, 143 F.3d 428 (8th Cir. 1998); *Storey v. Shearson Lehman Hutton, Inc.*, 949 F.2d 1039 (8th Cir. 1991).

■ Two principles guide this determination. First, the duty to arbitrate is a contractual obligation, and thus we must determine from the language of the arbitration agreement whether the parties intended to arbitrate the particular dispute in question. *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir. 1984); *Merrill Lynch, Pierce, Fenner & Smith v. Hovey*, 726 F.2d 1286 (8th Cir. 1984). Second, when the contract language is ambiguous or unclear, a "healthy regard" for the federal policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Morgan, supra* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)).

## II. NASD Code of Arbitration Procedure 10201

Turning now to the merits, we must decide whether the U-4 agreement, the arbitration clause contained therein, and the NASD Code of Arbitration Procedure 10201 required arbitration of Mr. Lewis's tort claims against Llama Capital, Llama Mortgage, and Ms. Walton. As mentioned previously, the U-4 agreement Mr. Lewis signed in connection with his employment with Llama Company provided in relevant part that:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organization indicated in Item 10 [the NASD by-laws including the Code of Arbitration Procedures] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

NASD Code of Arbitration Procedures 10201(a), entitled "Required Submission," provides that:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, *arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member,* shall be arbitrated under this Code, at the instance of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member or a person associated with a member against a member; and
>
> (3) a person associated with a member against a person associated with a member.

(Emphasis added.)

█ Pursuant to the unambiguous language of this provision, we believe that a court is required to compel arbitration, under the NASD Code, if the underlying dispute either arises: 1) "in connection with the business of such member(s) or in connection with the activities of such associated person(s)," or 2) "out of the employment or termination of employment of such associated person(s) with such a member."

## A. Arising Out of Employment of the Member

In their briefs, the appellants assert that the "first reason this dispute must be arbitrated is that the dispute arose out of Lewis's employment with Llama Company." This is the second subject matter listed above.

Article I(q) of the NASD by-laws defines "person associated with a member" or "associated person of a member" as:

> every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member,

whether or not any such person is registered or exempt from registration with the Corporation pursuant to these By-Laws.

Furthermore, Article I (m) and (g) of the NASD by-laws define "member" as "any broker or dealer admitted to membership in the Corporation [NASD]." The parties agree that Mr. Lewis is the "associated person" and that Llama Company is the "member." Moreover, there is nothing in the record that suggests that either Llama Capital, Llama Mortgage, Ms. Walton, or the joint venture are members of NASD. Although the appellants cite many cases in their brief that define what type of dispute "arises out of employment," we think that the salient issue in this case is whether the dispute over the proceeds of the bonus plan arose out of Mr. Lewis's employment *with Llama Company*.[3]

After a careful analysis of the relevant relationships in this case, we must answer this question in the negative. The parties admit that Llama Company is the only NASD member in this case. As an employee of a NASD member, Mr. Lewis signed an arbitration agreement embodied in the U-4 form. The underlying dispute in this case is whether Mr. Lewis is entitled to payment under the terms of the *joint venture's* Capital Markets Bonus Plan, and not whether Mr. Lewis is entitled to payment under any agreement with *Llama Company*. Importantly, the Capital Markets Bonus Plan does not indicate that Mr. Lewis served on the Capital Markets Committee as a representative of *any* Llama company.

 We are also persuaded by the fact that neither the joint venture nor any of its individual members (Llama Capital, Llama Mortgage, or Boston Capital Corporation) are members of NASD. Hence, the appellants claim that the NASD arbitration

---

[3] On page 64 of their brief, the appellants argue that the trial court should have compelled arbitration under Section 10201 because "[a]ll claims asserted by Lewis arise from the business of Llama Company or his employment with Llama Company and *his relationship with person and entities associated with Llama Company*." (Emphasis added.) This argument, however, ignores the plain language of Section 10201, which requires the underlying employment dispute to be between the associated person and "*a member*," and not between an associated person and "*person and entities associated with*" the member.

agreement applies in this case because two of the members of the joint venture, Llama Capital and Llama Mortgage, were one of the fifteen or so business entities loosely associated with Llama Company, the only NASD member. In fact, the only thing that Llama Company has in common with Llama Capital and Llama Mortgage is that all three entities are owned by Alice Walton, who was sued in her individual capacity and not as a director or officer of any of the relevant Llama entities. We agree with the trial court that this connection is much too tenuous to say that the underlying dispute in this case arose out of Mr. Lewis's employment with *Llama Company*, the sole NASD "member."

### B. Arising in Connection with the Business of a Member

■ Next, the appellants turn to the first phrase of Section 10201(a) defining the subject matter of disputes that must be submitted to arbitration. Specifically, they allege in this section of their briefs that "the second reason the subject matter of this dispute must be arbitrated is that it arose out of the business of Lewis' employer, Llama Company."[4] For the reasons explained above, we agree with the trial court that the dispute over the bonus-plan proceeds has to do with the business of the joint venture, and not with the business of Llama Company, the sole NASD member in this case.

### III. Conclusion

■ Because we do not think that Mr. Lewis's tort claims against the appellants fall under the subject matter of the arbitration agreement, we need not address the appellants' remaining arguments as to whether they are the proper parties to compel arbitration under NASD Code 10201, or whether they may enforce the arbitration agreement as third-party beneficiaries. In sum, although there is a strong federal policy favoring arbitration

---

[4] It should be noted that in their briefs the appellants do not rely upon the remaining portion of this phrase, which is "in connection with activities of such associated person(s)."

when the language of the arbitration agreement is ambiguous, we hold that the unambiguous language of the arbitration agreement in this case does not require arbitration of Mr. Lewis's tort claims against the appellants. Accordingly, we affirm the trial court's denial of the motion to compel arbitration.

Affirmed.

CORBIN, J., THORNTON, J., and SMITH, J., dissent.

RAY THORNTON, Justice, dissenting. I respectfully dissent from the majority's conclusion that arbitration is not required. In my view, the agreement entered into by Mr. Lewis and the Llama Company, the U-4, clearly subjects this case to arbitration. The NASD Code of Arbitration Procedure 10201(a) applies to any dispute between or among members and/or associated person(s) arising out of the employment of a person associated with such member. The code further provides that such dispute shall be arbitrated under this code, at the instance of "a person associated with a member against a person associated with a member."[1]

The Llama Company, a member of the NASD, was originally joined as a defendant in this case. The Llama Company was the employer of Mr. Lewis, and was the only party to the litigation who was providing employment compensation to Mr. Lewis for providing services to, or at the direction of, the Llama Company throughout the time of this dispute.

Mr. Lewis, as an employee of the Llama Company, was an associated person with the NASD member, the Llama Company,

---

[1] Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), *or arising out of the employment* or termination of employment *of such associated person(s) with such member, shall be arbitrated* under this code, at the instance of:

 (1) a member against another member;

 (2) a member against a person associated with a member or a person associated with a member against a member; and

 (3) *a person associated with a member against a person associated with a member.*

and executed an agreement with his employer (the U-4 agreement) to arbitrate any dispute between himself and his firm "or any other person" as described in 10201(a). The U-4 agreement is an agreement to arbitrate.[2] Alice Walton, the President of the Llama Company, was also a person associated with a member, the Llama Company, and had also executed a U-4 agreement to arbitrate any disputes arising between Ms. Walton and the Llama Company or a person associated with the Llama Company.

This dispute relates to the employment of Mr. Lewis, and the appropriate compensation for services provided by him at the direction of his employer, for the benefit of a joint venture, which was closely associated with his employer, the Llama Company.

The majority holds that the dispute does not arise out of Mr. Lewis's employment with a member. This conclusion is not supported by the pleadings, stipulations of fact, or affidavits presented in this case. Mr. Lewis was at all times relevant to this suit an employee of the Llama Company. The Llama Company is an NASD member. The Llama Company and all of its sister companies are controlled by Alice Walton. Alice Walton urged Mr. Lewis to perform services for the joint venture. While providing services to this joint venture, Mr. Lewis continued to work for Alice Walton's Llama Company. All work on the joint venture performed by Mr. Lewis was completed from his Fayetteville Llama Company office. Moreover, the claim asserted by Mr. Lewis was that Alice Walton, and two other defendants, Llama Capital, and/or Llama Mortgage, converted the money in dispute by depositing it with the Llama Company, the NASD member, and Mr. Lewis's employer. The heart of this dispute involves activities that took place during Mr. Lewis's tenure at the Llama Company. Specifically, it involves events that were the direct result of a work assignment given to Mr. Lewis by Alice Walton. Accordingly, all conditions set forth in the unambiguous agree-

---

[2] I agree to arbitrate any dispute, claim or controversy that may arise between me, and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organization indicated in Item 10 [the NASD by-laws including the Code of Arbitration Procedure].

ment to arbitrate signed by Mr. Lewis with Alice Walton's Llama Company should be enforced.

Alice Walton, as a person associated with the NASD member, has the right to demand arbitration. Mr. Lewis sought to avoid this result by dismissing the Llama Company from the litigation on the day before the hearing, but that does not bar Alice Walton's rights. *See American Ins. Co. v. Cazort*, 316 Ark. 31, 871 S.W.2d 575 (1994) (holding that one should not be allowed to circumvent arbitration by nonsuiting a party that would subject the matter to arbitration).

In my view, Llama Capital and Llama Mortgage have a status interwoven with that of Alice Walton, and arbitration addressing the merits of the compensation issue will resolve any remaining issues between Mr. Lewis and these two corporations. If not joined in arbitration of the underlying dispute, any separate action against them should be stayed pending resolution of the arbitration dispute. The disposition of this case by submitting it to arbitration is required by the plain and unambiguous language of the U-4 agreements and the Code of Arbitration Procedure.

It must also be noted that the position taken by the majority opinion today is contrary to the overwhelming public policy favoring arbitration. The United States Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), articulated its position on the use of arbitration in cases such as the present case subject to the Federal Arbitration Act. The Court held that:

> the Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4.

*Id.* The Court also noted that "the Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dean*

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir. 1984). The language used by the Court seems clear that in a case that is governed by the Federal Arbitration Act there is strong public policy in favor of arbitration.

Arkansas has followed the federal courts' lead and also expressed a preference for resolving matters through arbitration. In *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996), we explained the advantages to arbitration, noting that as a matter of public policy, arbitration is strongly favored, and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Lancaster v. West*, 319 Ark. 293, 891 S.W.2d 357 (1995); *Estate of Sandefur v. Greenway*, 898 S.W.2d 667 (Mo. App. W.D. 1995); *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996). We have also followed the federal courts view that any doubts and ambiguities of what matters are subject to arbitration should be resolved in favor of arbitration. *See Wessell Bros. v. Crossett Sch. Dist. No. 52*, 287 Ark. 415, 701 S.W.2d 99 (1985). Thus, I am dismayed that the majority has failed to acknowledge that the U-4 signed by Mr. Lewis clearly subjects him to arbitration at the demand of Ms. Walton, who has also signed a U-4 agreement. I am also concerned that the majority has ignored the strong public policy favoring arbitration as consistently announced by this court and federal courts. For those reasons, I respectfully must dissent.

I am authorized to state that CORBIN and SMITH, JJ., join in this dissent.