



# SUPREME COURT OF ARKANSAS

**No.** CV–14–549

| | |
|---|---|
| BIGGE CRANE & RIGGING CO.; CLAUS FREDERIKSEN; DP ENGINEERING, LTD.; JOHN SCROGGINS; AND VEI GENERAL CONTRACTORS, INC.<br>APPELLANTS<br><br>V.<br><br>ENTERGY ARKANSAS, INC.; AND ENTERGY OPERATIONS, INC.<br>APPELLEES | **Opinion Delivered** February 26, 2015<br><br>APPEAL FROM THE POPE COUNTY CIRCUIT COURT<br>[NO. CV–2013–176–IV]<br><br>HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE<br><br><u>AFFIRMED</u>. |

**JIM HANNAH, Chief Justice**

Appellants, Bigge Crane and Rigging Co. and Claus Frederiksen ("Bigge"), appeal an order of the Pope County Circuit Court denying a motion to compel arbitration with appellees, Entergy Arkansas, Inc., and Entergy Operations, Inc. ("Entergy"). Bigge sought to arbitrate tort claims as a purported third-party beneficiary of a contract between Entergy and Siemens Energy, Inc. ("Siemens). For reversal, Bigge contends that the circuit court erred in concluding (1) that issues of arbitrability were matters for judicial determination and (2) that Bigge could not invoke arbitration. We affirm the circuit court's order.

In March 2010, Entergy entered into an Alliance Agreement with Siemens, under which Siemens was to provide Entergy with multi-outage turbine generator work; field maintenance and repair services; equipment, modernization, and upgrade services; and other

technical services at three nuclear facilities. The Alliance Agreement included an arbitration provision, which stated that "[a]ny claim, dispute or controversy arising out of or relating to this Agreement, shall be submitted to binding arbitration." Pursuant to the Alliance Agreement, Entergy and Siemens agreed to a contract order for Siemens to replace a large component of a generator called a stator at Entergy's Arkansas Nuclear One ("ANO") facility in London, Arkansas.

Siemens had a separate, long-term agreement called the Master Services Agreement ("MSA") with Bigge. Under the MSA, Bigge was to provide "rigging, lifting, loading, transporting, transloading to rail trucks, and other services associated with crane services . . . and materials associated with lifting and crane services." The dispute-resolution terms in the MSA called for Bigge and Siemens to use all reasonable efforts to resolve disputes amicably prior to commencing any formal legal proceedings, but if they were unable to resolve such disputes, they were free to pursue any and all remedies at law or in equity.[1]

Bigge and Siemens executed a separate purchase order under the MSA to govern Bigge's removal of the existing stator at ANO. On March 31, 2013, a gantry crane designed, engineered, built, and operated by Bigge collapsed while moving the 524-ton stator out of ANO. The crane failure and collapse killed one person, injured ten others, and caused significant damages to ANO.

On July 12, 2013, Entergy filed suit against Bigge and others in circuit court, alleging

---

[1]The dispute-resolution terms required Bigge to file any action against Siemens in Orlando, Florida.

tort claims for negligence, gross negligence, and willful and wanton conduct. Bigge moved to dismiss parts of Entergy's complaint on August 22, 2013.[2] On November 26, 2013, Bigge filed a motion in Arkansas state court to compel arbitration of Entergy's tort claims against Bigge. Bigge's motion relied exclusively on the arbitration provisions contained in the Alliance Agreement between Entergy and Siemens. Bigge argued that the arbitration provisions deprived the circuit court of jurisdiction to determine whether Entergy and Bigge had a valid agreement to arbitrate. Bigge also argued that, even if the circuit court had jurisdiction to make that determination, Bigge could enforce the Alliance Agreement's arbitration provisions as a third-party beneficiary or through equitable estoppel.

Following a hearing, the circuit court denied Bigge's motion to compel arbitration. The circuit court ruled that because there was no agreement to arbitrate that applied to disputes between Entergy and Biggee, it was appropriate for the court to decide the issue of arbitrability; that Bigge was not a third-party beneficiary of the Alliance Agreement; and that Entergy was not equitably estopped from pursuing its remedies in court. In addition, the circuit court found that Bigge had waived any right to compel arbitration by litigating some of the same issues in Florida federal court and by filing a motion to dismiss and engaging in discovery in Arkansas state court. Bigge appeals.

An order denying a motion to compel arbitration is an immediately appealable order.

---

[2]On August 30, 2013, Bigge filed its own lawsuit against Entergy and Siemens in a Florida federal court. The Florida litigation has since been transferred to the United States District Court for the Eastern District of Arkansas. *Bigge Crane & Rigging Co. v. Entergy Operations, Inc.*, No. 4:14-cv-00298-DPM (E.D. Ark. transferred May 14, 2014), ECF No. 76.

Ark. R. App. P.–Civ. 2(a)(12) (2014). This court reviews a circuit court's order denying a motion to compel arbitration de novo on the record. *E.g.*, *Bank of the Ozarks v. Walker*, 2014 Ark. 223, at 4, 434 S.W.3d 357, 360.

Entergy does not dispute Bigge's contention that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the arbitration provisions in the Alliance Agreement. A party seeking to compel arbitration under the FAA must establish that (1) there is a valid agreement to arbitrate between the parties, and (2) the claims in dispute fall within that agreement's scope. *See LegalZoom.com, Inc. v. McIllwain*, 2013 Ark. 370, at 8–9, 429 S.W.3d 261, 265. Bigge is not a party to the Alliance Agreement, but in some instances, a nonparty may compel arbitration through "traditional principles of state law" such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631 (2009). In this case, Bigge contends that it may compel arbitration because it is a third-party beneficiary of the Alliance Agreement between Entergy and Siemens and, as such, it has the right to invoke that contract's arbitration provisions. Before addressing the merits of Bigge's position, we must consider Bigge's contention that the arbitrator, and not the circuit court, should have decided issues of arbitrability.

## I. *Who Decides Arbitrability*

Although the Supreme Court of the United States has

recognized and enforced a liberal federal policy favoring arbitration agreements, it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the "*question of arbitrability*," is an issue for judicial determination [u]nless the parties clearly and unmistakably provide

SLIP OPINION

otherwise.

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations omitted); *see also HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308 (stating that the court, rather than the arbitrator, decides the question of arbitrability unless the parties clearly and unmistakably delegate that question to the arbitrator).

The relevant arbitration provisions are contained in Article 56 of the Alliance Agreement between Entergy and Siemens:

56.1  The *parties*, through their respective Project Managers, shall use all reasonable efforts to resolve any disputes that may arise between them under this Agreement. If a dispute is not resolved at the Project Manager level, a meeting shall be held promptly between the parties' Alliance Directors.

. . . .

56.2  If the Alliance fails to resolve the dispute . . . they shall . . . prepare and transmit a briefing package regarding the dispute to an assigned "Alliance Steering Committee" for review.

. . . .

56.3  If the Steering Committee also fails to resolve the dispute . . . the Alliance Directors shall . . . submit the issue to an assigned "Advisory Committee" for final resolution.

. . . .

56.4  If the *parties* are not successful in resolving the dispute, they may mutually agree to submit the dispute to non-binding third party mediation. . . . If the *parties* are not successful in resolving the dispute through mediation, or if the dispute otherwise remains unresolved . . . then *either party* may submit the dispute to binding arbitration as provided in 56.5 below, which shall be the exclusive method of resolving such disputes. *Each party* shall bear its own costs and expenses of any mediation or arbitration.

56.5  Any claim, dispute, or controversy arising out of or relating to this Agreement

5

shall be submitted to binding arbitration by the American Arbitration Association for arbitration in Little Rock, Arkansas in accordance with the Commercial Arbitration Rules then in effect. There shall be three arbitrators, with *each party* selecting one; the third neutral arbitrator, who shall be the chairman of the panel, shall be elected by the two party-appointed arbitrators. The claimant shall name its arbitrator in the demand for arbitration and the responding party shall name its arbitrator within 30 days after the receipt of the demand for arbitration. The third arbitrator shall be named within 30 days after the appointment of the second arbitrator. The American Arbitration Association shall be empowered to appoint any arbitrator not named in accordance with the procedure herein. The arbitrators shall have no jurisdiction to consider (i) claims for consequential damages or damages beyond the limitations of liability contained in the Contract and (ii) any challenge to the limitation of the liability contained in the Contract. The decision of the arbitrators shall be final and binding upon the parties without the right of appeal to the courts. The award rendered by the arbitration shall be final and judgment thereon may be entered by any court having jurisdiction thereof. *Each Party* shall bear its own cost and expenses in connection with such arbitration. Provided, however, that nothing herein shall in any way be deemed or construed to limit or restrict *either Party* from seeking or obtaining injunctive relief to protect its patents, copyrights, trade secrets, or other intellectual property in any court of competent jurisdiction, and the arbitrators shall have no jurisdiction to consider any issue of intellectual property infringement or validity.

(Emphasis added.)

Assuming *arguendo* that there is clear and unmistakable evidence in the arbitration provisions that the *parties* to the Alliance Agreement—Entergy and Siemens—agreed to arbitrate arbitrability, there is no clear and unmistakable evidence in the arbitration provisions that Entergy and Bigge agreed to arbitrate the issue of whether *their* dispute is arbitrable. *See Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 610 (S.D.N.Y. 2011) (concluding that there was no clear and unmistakable evidence from the arbitration agreement that a signatory and a nonsignatory agreed to arbitrate the issue of whether their dispute was arbitrable for the simple reason that there was no contract between them). Nor can it be said that the Alliance Agreement between Entergy and Siemens clearly and unmistakably provides for

6

arbitral resolution of arbitrability disputes with third parties. *See id*. The arbitration provisions in the Alliance Agreement contain no reference to Bigge or to third parties in general.[3] To the contrary, the Alliance Agreement states that *either party*, that is, either Entergy or Siemens, "may submit [a] dispute to binding arbitration." There is nothing in the arbitration provisions to suggest that Entergy and Siemens intended to afford anyone other than themselves the right to arbitrate arbitrability.

In urging otherwise, Bigge relies on this court's decision in *HPD*, 2012 Ark. 408, 424 S.W.3d 304, in which we observed that a majority of the courts that have considered the issue have held that, when a contract requires arbitration pursuant to rules that expressly delegate the question of arbitrability to the arbitrator, the contract clearly and unmistakably vests the arbitrator, and not the court, with the authority to decide which issues are subject to arbitration. In *HPD*, we concluded that the parties' incorporation of the American Arbitration Rules into the arbitration agreement, along with other language in the agreement, constituted clear and unmistakable evidence of the parties' intent to arbitrate the question of arbitrability. 2012 Ark. 408, at 11–12, 424 S.W.3d at 311. In the instant case, the Alliance Agreement incorporates the American Arbitration Association's Commercial Arbitration Rules, and Rule R–7(a) of those Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim

---

[3]The fact that the Alliance Agreement does not mention third–party beneficiaries does not, by itself, preclude Bigge from establishing that it is a third-party beneficiary. *See Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 610, n.1 (S.D.N.Y. 2011).

7

SLIP OPINION

or counterclaim." Bigge claims, therefore, that the parties intended for an arbitrator to determine whether a dispute was arbitrable.

In making this argument, Bigge overlooks a crucial distinction between the facts in this case and those in *HDP*. At issue in *HDP* was the arbitrability of a dispute between two signatories to an arbitration clause. Here, however, the issue is the arbitrability of a dispute between a nonsignatory, Bigge, and a signatory, Entergy. Evidence of intent to have an arbitrator determine its jurisdiction of disputes submitted by either *party* to an arbitration agreement does not clearly and unmistakably demonstrate the parties' intent to have the arbitrator determine its jurisdiction with respect to any dispute raised by a *nonparty*. *See Republic of Iraq v. BNP Paribas USA*, 472 Fed. App'x 11, 13 (2d Cir. 2012); *see also ABB AG*, 769 F. Supp. 2d at 610–11 ("[S]imply because a party has agreed to arbitrate questions of arbitrability with its contractual counterpart does not mean that it must arbitrate with *any* non-signatory to the contract.") (emphasis in original) (internal quotations omitted); *QPro, Inc. v. RTD Qual. Servs. USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011) ("When, as here, the issue is whether a nonsignatory to an arbitration clause may enforce it against a signatory, the courts have viewed this as a matter for the courts to decide.").

Finally, Bigge cites *Contec Corp. v. Remote Solution, Inc.*, 398 F.3d 205 (2d Cir. 2005), in which the United States Court of Appeals of the Second Circuit allowed a nonsignatory defendant to compel a signatory to arbitrate issues of arbitrability. Bigge's reliance on *Contec* is misplaced. In *Contec*, the court concluded that Contec Corporation could compel arbitration of the arbitrability of a dispute arising under an agreement signed by its prior

SLIP OPINION

corporate form, Contec L.P., and defendant Remote Solution, even though the arbitration clause was limited to disputes between the "parties." In a later case, the Second Circuit explained that two facts informed its conclusion in *Contec*: (1) the undisputed relationship between each corporate form of Contec and Remote Solution and (2) the parties continued to conduct themselves as subject to the agreement, regardless of the change in corporate form. *BNP*, 472 Fed. App'x 11, 13 (citing *Contec*, 398 F.3d at 209) (internal quotations omitted). Thus, in *Contec*, the court allowed the nonsignatory defendant to compel the signatory to arbitrate issues of arbitrability because the defendant was essentially equivalent to the original signatory to the arbitration agreement.

Here, Bigge, the nonsignatory defendant, was a subcontractor to Siemens, the prime contractor who entered into the Alliance Agreement with Entergy. Bigge was not, however, essentially equivalent to a signatory. In sum, Bigge has failed to demonstrate that it is entitled to an arbitral resolution of arbitrability. Therefore, we hold that the circuit court did not err in concluding that, under the facts of this case, issues of arbitrability were matters for judicial determination.

## II. *Whether the Dispute is Arbitrable*

Bigge asserts that, even if the circuit court properly exercised its jurisdiction to address issues regarding the scope and validity of the arbitration provisions, it decided those issues erroneously. Generally, the terms of an arbitration contract do not apply to those who are not parties to the contract. *Amer. Ins. Co. v. Cazort*, 316 Ark. 314, 320, 871 S.W.2d 575, 579 (1994). But a litigant who is not a party to an arbitration agreement may invoke arbitration

under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *See Carlisle*, 556 U.S. at 632. Bigge claims that two doctrines of Arkansas law allow it to enforce the arbitration provisions as a nonsignatory: (1) third-party beneficiary and (2) equitable estoppel.

In Arkansas, the presumption is that parties contract only for themselves and, thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. *E.g.*, *Elsner v. Farmers Ins. Group, Inc.*, 364 Ark. 393, 395, 220 S.W.3d 633, 635 (2005). If a contract is made for the benefit of a third party, then it is actionable by such third party if there is substantial evidence of a clear intention to benefit that third party. *Id.*, 220 S.W.3d at 635. But a third party may not recover upon a contract under which the parties did not intend to benefit him, one under which he is a mere incidental beneficiary. *Cook v. U.S. Fid. & Guar. Co.*, 216 Ark. 743, 745, 227 S.W.2d 165, 136 (1950).

In support of its argument that it is a third-party beneficiary to the Alliance Agreement, Bigge cites *Little Rock Wastewater Utility v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995). In that case, the Arkansas Highway and Transportation Department needed to relocate sewer lines before other contractors could perform road work. *Id.* at 306, 902 S.W.2d at 762. Little Rock Wastewater Utility, which had contracted with the highway department to relocate the lines, did not complete its work in a timely manner, and a subcontractor who was supposed to prepare the site brought suit as a third-party beneficiary of the utility's contract. *Id.*, 902 S.W.2d at 762–63. This court noted that

the utility's contract provided that the utility would perform its work within 150 days and in a manner that would result in no avoidable interference or delay in the highway department's construction work. *Id.*, 902 S.W.2d at 762. The subcontractor testified that when making the bid for the subcontract, he relied on the fact that the utility essentially had completed its work and would coordinate the remaining work with the highway department while construction on the roadway was in progress. *Id.* at 308, 902 S.W.2d at 764. Because there was clear evidence of an intent to benefit the other contractors who were waiting on the utility to perform before they could start their construction work, this court concluded that the circuit court correctly refused to grant a directed verdict in favor of the utility and correctly allowed the third-party-beneficiary issue to be submitted to the jury. *Id.* at 309, 902 S.W.2d at 764–65.

Although *Larry Moyer Trucking* involved a subcontractor, it does not stand for the proposition that, in all cases, subcontractors are third-party beneficiaries of contracts between prime contractors and owners. Indeed, the general rule is that a subcontractor that agrees to supply materials or labor to a general contractor is only an incidental beneficiary of any contract between the general contractor and the ultimate client. *See GS4 Tech. LLC v. United States*, 114 Fed. Cl. 662, 670 (2014); *see also* 9 *Corbin on Contracts* § 45.3 (rev. ed. 2007); Restatement (Second) of Contracts § 302 cmt. e, illus. 19; *accord BIS Computer Solutions, Inc. v. City of Richmond*, 122 Fed. App'x 608, 610, 612 (4th Cir. 2005) (finding that, under Virginia law, the subcontractor was not an intended third-party beneficiary, despite being named in the prime contract and despite the inclusion of a contract provision prohibiting the

subcontractor's removal without the government's approval).

The Alliance Agreement between Entergy and Siemens is analogous to a standard construction contract in which a property owner retains a contractor to complete a project, and the contractor hires subcontractors to assist in performing the contractor's work. *See BIS*, 122 Fed. App'x at 612. Unless the parties specify otherwise, the sole intended beneficiaries of any such contract are the property owner and the contractor, and any third party benefitting from the contract, such as a subcontractor, is merely an incidental beneficiary. *See id*. Here, Bigge was merely an incidental beneficiary of the contract. Accordingly, we hold that the circuit court correctly found that Bigge was not entitled to invoke arbitration as a third-party beneficiary.

Next, Bigge contends that it may compel Entergy to arbitrate its claims through the doctrine of equitable estoppel. Courts have recognized that equitable estoppel can apply when a signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting claims against the nonsignatory. *E.g.*, *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 733 (8th Cir. 2009). Bigge, citing *Cazort*, 316 Ark. 314, 871 S.W.2d 575, contends that Entergy relied on the terms of the Alliance Agreement in asserting its claims. In that case, Cazort filed suit against his broker, Berman; the financial institution holding the brokerage account, NAP; and the corporate bond holder, American Insurance Company. *Id*. at 316, 871 S.W.2d at 577. NAP and Berman moved to compel arbitration and were voluntarily dismissed by Cazort from the litigation. *Id*., 871 S.W.2d at 577. American's motion to compel arbitration was denied. *Id*. at 318, 871 S.W.2d at 577. At

issue on appeal was whether American could compel Cazort to arbitrate since Cazort did not sign an arbitration agreement with American. In reversing the circuit court's denial of American's motion to compel arbitration, we stated:

> Cazort's allegation, in part, is that NAP and Berman breached their contract with him, and they are liable for that breach of contract. He relies on the contract for his breach of contract claim, but, at the same time, seeks to circumvent the arbitration provision of the same contract by dismissing his claims against the principals NAP and Berman. The indemnitor, American, had filed a cross-complaint against NAP and Berman. If this procedure were to be allowed, NAP and Berman would be denied the benefit of their arbitration agreement.

*Id.* at 321–22, 871 S.W.2d at 579.

*Cazort* is distinguishable from the instant case. There, Cazort relied on the contract to prove his breach-of-contract claim, but he sought to avoid the contract's arbitration provision. We concluded that it would have been inequitable to allow Cazort to maintain such inconsistent positions to avoid arbitration and noted that a plaintiff "cannot have it both ways. It cannot rely on the contract when it works to its advantage and ignore it when it works to its disadvantage." *Id.* at 322, 871 S.W.2d at 579–80 (citing *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)); *see also Avila Group, Inc. v. Norma J.*, 426 F. Supp. 537, 542 (D.C.N.Y. 1979) ("To allow [the litigant] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.").

In the instant case, Bigge has not shown that Entergy, in resisting arbitration, has attempted to have it both ways. The circuit court found that

> Entergy has no contract with Bigge. Entergy is not suing and cannot sue Bigge for a breach of the Alliance Agreement. Rather, Entergy has filed claims against Bigge for

negligence, gross negligence, and willful and wanton conduct. Entergy's tort claims against Bigge would exist regardless whether a written contract existed between Entergy and Siemens or between Siemens and Bigge or what the terms of those contracts were. The fact that these contracts do exist does not alter Entergy's tort claims, and Entergy has in no way relied on the terms of the Alliance Agreement in asserting its claims against Bigge.

We agree. Accordingly, we hold that the circuit court did not err in concluding that Entergy was not equitably estopped from pursuing its claims against Bigge in court rather than in arbitration.

Bigge also contends that the circuit court erred in finding that Bigge had waived its right to arbitration. Because we have determined that Bigge had no right to invoke arbitration, we need not consider the issue of waiver.

Finally, the concurrence appears to assert that, in this case, it is wholly unnecessary for this court to address the arguments raised by the parties on appeal because article 51 of the Alliance Agreement "specifically except[s] Entergy's tort claims against Bigge." The concurrence's reliance on that article is misplaced. Article 51, which limits the recovery of consequential damages, has no bearing on the issues before this court.

Affirmed.

BAKER and HART, JJ., concur.

**JOSEPHINE LINKER HART, Justice, concurring.** In its complaint, Entergy Arkansas, Inc., and Entergy Operations, Inc. (Entergy), allege tort claims based on the alleged negligence of Bigge Crane and Rigging Company and Claus Frederiksen (Bigge), a subcontractor of Siemens Energy, Inc. (Siemens). Entergy seeks from Bigge damages for injury to property and other economic losses. These claims, however, are not arbitrable under

14

the Alliance Agreement entered into by Entergy and Siemens. Thus, I agree to affirm the circuit court's denial of Bigge's motion to compel arbitration but do so for reasons other than those stated by the majority.

In order to grant a motion to compel arbitration, there must be a valid agreement to arbitrate between the parties and a dispute that falls within its scope. *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308. The court decides these questions of arbitrability unless the parties clearly and unmistakably delegate that issue to the arbitrator. *Id.*, 424 S.W.3d at 308.

In concluding that "there is no clear and unmistakable evidence in the arbitration provisions that Entergy and Bigge agreed to arbitrate the issue of whether *their* dispute is arbitrable," the majority—contrary to its analysis later in the opinion—ignores the proposition that certain common-law principles may allow a nonsignatory to enforce the arbitration agreement, such as a nonsignatory third-party beneficiary of the contract. 4 Am. Jur. 2d *Alternative Dispute Resolution* § 60. In fact, Bigge argues that it is a third-party beneficiary to the Alliance Agreement.

After reaching this conclusion, the majority then turns to the next issue, whether the dispute is arbitrable, and concludes that Bigge is not a third-party beneficiary to the Alliance Agreement because "there is no evidence in the Alliance Agreement that Entergy and Siemens intended to benefit Bigge," and that "Bigge was merely an incidental beneficiary of the contract." This conclusion, however, is not based on a discussion of the specific provisions of the Alliance Agreement that Bigge argues cause it to be a third-party beneficiary of the



Alliance Agreement.

For instance, the Alliance Agreement specifically provides as follows:

Notwithstanding any conflicting or inconsistent provisions set forth elsewhere, neither party nor their subcontractors of any tier shall be liable to the other for damages for loss of anticipated profits, loss of use of revenue, losses by reason of plant shutdown or service interruption, cost of purchased or replacement power, cost of capital, damage to or loss of property (except as specifically set forth . . . in paragraph 52.2), claims of customers of the Owners and Entergy Operations, or any other indirect, special, incidental, or consequential damages (including negligence) of any other nature whether claims arises in contract, tort (including negligence and strict liability), under warranty or otherwise. The exclusion of consequential damage shall not relieve either party of its obligations pursuant to Article 9, Laws, Project Rules and Licenses, Article 15, Nuclear Liability Protection, Article 16, Property Damage Protection, Article 18, Indemnity, (only with respect to damage to third party property or personal injury), Article 19, Infringement, Article 21, Warranties, Article 36, Force Majeure, Article 52, Limitation of Liability, or Article 53, Transfer.

Arguably, this release of subcontractors from liability for damages caused by negligence would make Bigge a third-party beneficiary of the Alliance Agreement.[1]

Further, the majority concludes that a form of estoppel identified by this court in *American Insurance Company v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994), did not require Entergy to arbitrate its tort claims against Bigge. By quoting at length the circuit court's findings and stating, "We agree," the majority apparently concludes that Entergy is not suing Bigge for a breach of the Alliance Agreement, that *"Entergy's tort claims against Bigge would exist regardless [of] whether a written contract existed between Entergy and Siemens or between Siemens and Bigge or what the terms of those contracts were,"* (emphasis added), that "[t]he fact that these contracts do exist does not alter Entergy's tort claims," and that "Entergy has in no way relied

---

[1]The exceptions in that paragraph do not address tort claims against subcontractors for property damage and economic loss.

on the terms of the Alliance Agreement in asserting its claims against Bigge."

However, the majority's conclusion that Entergy's tort claims exist regardless of the Alliance Agreement ignores a specific provision of the Alliance Agreement—the provision quoted above—which establishes that the Alliance Agreement itself precludes Entergy from seeking from Bigge property and economic-loss damages caused by Bigge's negligence. Thus, the Alliance Agreement specifically excepted Entergy's tort claims against Bigge.

The arbitration provision in Entergy and Bigge's Alliance Agreement provides, "Any claim, dispute or controversy arising out of or relating to the Agreement, shall be submitted to binding arbitration." By excluding these claims against subcontractors, the Alliance Agreement does not show that Entergy clearly and unmistakably delegated to an arbitrator the determination of the arbitrability of its tort claims against Seimen's subcontractors. Further, because the Alliance Agreement specifically excludes Entergy's tort claims against Bigge for damages to property and economic loss, these claims do not arise out of or relate to the Alliance Agreement.[2] *See Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999) (holding that tort claims asserted by an employee did not fall under the subject matter of the arbitration agreement). Accordingly, we need not address Bigge's remaining arguments whether they may enforce the arbitration agreement as third-party beneficiaries or that Entergy is estopped from denying the applicability of the arbitration provision. *Id.* at 53, 987 S.W.2d at 267.

---

[2]Without stating any basis for its position, the majority opines that "Article 51, which limits the recovery of consequential damages, has no bearing on the issues before this court." The majority's dismissive remark is nothing more than a bare assertion that it does not even attempt to support.



BAKER, J., joins in this concurrence.

*Munson, Rowlett, Moore and Boone, P.A.*, by: *Bruce E. Munson*, *Elizabeth A. Fletcher*, and *Beverly A. Rowlett*; and *Kane Russell Coleman & Logan PC*, by: *Lawrence T. Bowman* and *Sanjay K. Minocha*, for appellants.

*Quattlebaum, Grooms, Tull & Burrow, PLLC*, by: *Steven W. Quattlebaum*, *John E. Tull III*, and *Michael N. Shannon*, for appellees.