Josephine Linker Hart, Justice, concurring. In its complaint, Entergy Arkansas, Inc., and Entergy Operations, Inc. (Enter-gy), allege tort claims based on the alleged negligence of Bigge Crane and Rigging Company and Claus Frederiksen (Bigge), a subcontractor of Siemens Energy, Inc. (Siemens). Entergy seeks from Bigge damages for injury to property and other economic losses. These claims, however, are not arbitrable under |lflthe Alliance Agreement entered into by Entergy and Siemens. Thus, I agree to affirm the circuit court’s denial of Bigge’s motion to compel arbitration but do so for reasons other than those stated by the majority. In order to grant a motion to compel arbitration, there must be a valid agreement to arbitrate between the parties and a dispute that falls within its scope. HPD, LLC v. TETRA Techs., Inc., 2012 Ark. 408, at 6, 424 S.W.3d 304, 308. The court decides these questions of arbitrability unless the parties clearly and unmistakably delegate that issue to the arbitrator. Id., 424 S.W.3d at 308. In concluding that “there is no clear and unmistakable evidence in the arbitration provisions that Entergy and Bigge agreed to arbitrate the issue of whether their dispute is arbitrable,” the majority — contrary to its analysis later in the opinion— ignores the proposition that certain common-law principles may allow a nonsigna-tory to enforce the arbitration agreement, such as a nonsignatory third-party beneficiary of the contract. 4 Am. Jur. 2d Alternative Dispute Resolution § 60. In fact, Bigge argues that it is a third-party beneficiary to the Alliance Agreement. After reaching this conclusion, the majority then turns to the next issue, whether the dispute is arbitrable, and concludes that Bigge is not a third-party beneficiary to the Alliance Agreement because “there is no evidence in the Alliance Agreement that Entergy and Siemens intended to benefit Bigge,” and that “Bigge was merely an incidental beneficiary of the contract.” This conclusion, however, is not based on a discussion of the specific provisions of the Alliance Agreement that Bigge argues cause it to be a third-party beneficiary of the | lsAlliance Agreement. For instance, the Alliance Agreement specifically provides as follows: Notwithstanding any conflicting or inconsistent provisions set forth elsewhere, neither party nor their subcontractors of any tier shall be liable to the other for damages for loss of anticipated profits, loss of use of revenue, losses by reason of plant shutdown or service interruption, cost of purchased or replacement power, cost of capital, damage to or loss of property (except as specifically set forth ... in paragraph 52.2), claims of customers of the Owners and Entergy Operations, or any other indirect, special, incidental, or consequential damages (including negligence) of any other nature whether claims arises in contract, tort (including negligence and strict liability), under warranty or otherwise. The exclusion of consequential damage shall not relieve either party of its obligations pursuant to Article 9, Laws, Project Rules and Licenses, Article 15, Nuclear Liability Protection, Article 16, Property Damage Protection, Article 18, Indemnity, (only with respect to damage to third party property or personal injury), Article 19, Infringement, Article 21, Warranties, Article 36, Force Maj-eure, Article 52, Limitation of Liability, or Article 53, Transfer. Arguably, this release of subcontractors from liability for damages caused by negligence would make Bigge a third-party beneficiary of the Alliance Agreement.[1] Further, the majority concludes that a form of estoppel identified by this court in American Insurance Company v. Cazort, 316 Ark. 314, 871 S.W.2d 575 (1994), did not require Entergy to arbitrate its tort claims against Bigge. By quoting at length the circuit court’s findings and stating, “We agree,” the majority apparently concludes that Entergy is not suing Bigge for a breach of the Alliance Agreement, that “Entergy’s tort claims against Bigge would exist regardless [of! whether a written contract existed between Entergy and Siemens or between Siemens and Bigge or what the terms of those contracts were, ” (emphasis added), that “[t]he fact that these contracts do exist does not alter Entergy’s tort claims,” and that “Entergy has in no way relied 117on the terms of the Alliance Agreement in asserting its claims against Bigge.” However, the majority’s conclusion that Entergy’s tort claims exist regardless of the Alliance Agreement ignores a specific provision of the Alliance Agreement — the provision quoted above — which establishes that the Alliance Agreement itself precludes Entergy from seeking from Bigge property and economic-loss damages caused by Bigge’s negligence. Thus, the Alliance Agreement specifically excepted Entergy’s tort claims against Bigge. The arbitration provision in Entergy and Bigge’s Alliance Agreement provides, “Any claim, dispute or controversy arising out of or relating to the Agreement, shall be submitted to binding arbitration.” By excluding these claims against subcontractors, the Alliance Agreement does not show that Entergy clearly and unmistakably delegated to an arbitrator the determination of the arbitrability of its tort claims against Seimen’s subcontractors. Further, because the Alliance Agreement specifically excludes Entergy’s tort claims against Bigge for damages to properly and economic loss, these claims do not arise out of or relate, to the Alliance Agreement.[2] See Walton v. Lewis, 337 Ark. 45, 987 S.W.2d 262 (1999) (holding that tort claims asserted by an employee did not fall under the subject matter of the arbitration agreement). Accordingly, we need not address Bigge’s remaining arguments whether they may enforce the arbitration agreement as third-party beneficiaries or that Entergy is estopped from denying the applicability of the arbitration provision. Id. at 53, 987 S.W.2d at 267. | iSBaker, J., joins in this concurrence. . The exceptions in that paragraph do not address tort claims against subcontractors for property damage and economic loss. . Without stating any basis for its position, the majority opines that "Article 51, which limits the recovery of consequential damages, has no bearing on the issues before this court." The majority’s dismissive remark is nothing more than a bare assertion that it does not even attempt to support.